## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

D'LISA WILLIAMS, individually and on
behalf of all others similarly situated,

            Plaintiff,

      v.

JRN, INC., a Tennessee corporation,

            Defendant.

Case No. 3:22-cv-01253

Hon. Nancy J. Rosenstengel

## DEFENDANT JRN, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff D'Lisa Williams ("Plaintiff") filed this First Amended Class Action Complaint ("FAC") against her former employer, Defendant JRN, Inc. ("JRN"), alleging that JRN violated Section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Plaintiff's claims on behalf of herself and the putative class are limited to Section 15(b) only. *See generally* FAC ¶¶ 17-24; 32; 36; 41-54.

Plaintiff's action on behalf of herself and the putative class should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons: (a) the claims that predate June 13, 2017 are barred by the statute of limitations, (b) failure to state a claim under law existing prior to January 2019, (c) the claims are barred by the doctrine of *laches*, (d) the claims are barred by assumption of the risk and implied consent, (e) failure to plead negligent, reckless, or intentional conduct or entitlement to any damages, (f) the claims violate due process and seek excessive fines, and (g) Plaintiff is precluded from seeking declaratory and injunctive relief.

## LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To satisfy Rule 12(b)(6)'s pleading burden,

a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must "nudge[] their claims across the line from conceivable to plausible," or their complaint must be dismissed. *Id*. Although the Court must accept the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Crucially, a plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." (citation omitted)).

Further, a plaintiff's failure to timely file a complaint under the governing statute of limitations is an affirmative defense appropriately addressed via a motion to dismiss. *Anderson v. Holy See*, 934 F. Supp. 2d 954, 958-59 (N.D. Ill. 2013). Dismissal is proper where the complaint sets forth the facts necessary to demonstrate that the action is untimely. *Id*. at 959.

## ARGUMENT

**I.      Plaintiff's And The Putative Class Members' Claims That Pre-Date June 13, 2017 Are Barred By The Statute Of Limitations.**

Plaintiff alleges that she was employed by JRN from "approximately September 2008 until April 2021"[1] at its Kentucky Fried Chicken location in Harrisburg, Illinois. FAC ¶¶ 26-27. Plaintiff further alleges that JRN used a finger scan timeclock "for several years of her employment beginning around 2015 or 2016," and that she used the system until the end of her employment in

---

[1] For the purposes of this Motion to Dismiss only, JRN will give deference to Plaintiff's estimation of her resignation date and calculate applicable timeframes from a resignation date of April 30, 2021.

April 2021. *Id.* ¶¶ 28, 30. Plaintiff filed this putative class action on June 13, 2022 (Dkt. #1) on behalf of the putative class she defines as "[a]ll persons who, while residing in Illinois and employed by JRN, Inc., had their fingerprints collected, captured, stored, or otherwise used by JRN, Inc." FAC ¶ 32. The Illinois Supreme Court recently established a five-year statute of limitations for claims arising under BIPA, as the statute was silent on the issue. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801. Generally, a cause of action accrues and a limitations period begins to run "when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). According to Plaintiff's FAC, her claims began accruing in 2015 when she first used the timeclock. *See* FAC ¶ 28. Based on Plaintiff's filing of the FAC on June 13, 2022, all claims that accrued prior to June 13, 2017 should be dismissed with prejudice as untimely. Any putative class members' claims that accrued prior to June 13, 2017 should similarly be dismissed with prejudice as untimely. Plaintiff pled herself and the putative class members out of Court for any alleged claims that accrued prior to June 13, 2017.[2]

## II.     Dismissal Is Appropriate Because Plaintiff And The Putative Class Lack Claims Prior to 2019.

It is axiomatic that a cause of action exists only when an injury is suffered, and a claim accrues. *See Feltmeier*, 798 N.E.2d at 85. Based on this well-established legal principle, dismissal of Plaintiff's and putative class members' claims that accrued prior to January 2019 is similarly appropriate. This is because no claims "accrued" under then-existing law. From June 13, 2017 to December 21, 2017, there was no guidance on the interpretation of the term "aggrieved," such that Plaintiff (and similarly situated individuals) did not have a claim, as a claim could not and did not accrue, in the absence of actual damage. Between December 21, 2017 and September 28, 2018, Illinois law was clear that technical violations of BIPA were not actionable because they did not

---

[2] JRN denies any violation of BIPA or any other law.

cause "aggrievement," and thus no claim could arise. *Rosenbach v. Six Flags Ent. Corp.*, 147 N.E.3d 125 (Ill. App. 2017), *rev'd by Rosenbach v. Six Flags Entm't Corp.*, 129 N.E. 3d 1197 (Ill. 2019) ("*Rosenbach I*"); *accord Feltmeier*, 798 N.E.2d at 85. Adding to the confusion was *Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E.3d 1080 (Ill. App. 2018), such that from September 28, 2018 until January 25, 2019, it was entirely *unclear* as to whether technical BIPA violations caused claims to accrue, and thus were actionable, given the competing opinions from the Illinois Appellate Court. The issue was not settled until January 25, 2019 when *Rosenbach v. Six Flags Ent. Corp.,* 129 N.E.3d 1197 (Ill. 2019) ("*Rosenbach II*") was decided by the Illinois Supreme Court.

BIPA was enacted in 2008, the same year that Plaintiff began working for JRN. *See* FAC ¶ 26. From 2008 through the Illinois Appellate Court's 2017 decision in *Rosenbach I*, no appellate court had interpreted the meaning of "aggrieved" in this context. The Appellate Court in *Rosenbach I* held that failure to provide notice and obtain consent under BIPA Section 15(b) was a mere technical violation of the statute, and did not give rise to a claim. *Id*. Relying on a series of federal court decisions reaching the same conclusion as persuasive authority, *Rosenbach I* held that "if the Illinois legislature intended to allow for a private cause of action for every technical violation of the Act, it could have omitted the word 'aggrieved' and stated that every violation was actionable." *Id.* at 130-31. As a result of *Rosenbach I*, allegations of a mere technical violation of BIPA without any "injury or adverse effect" were insufficient, and a party that did not allege injury or adverse effect could not recover "under any of the provisions in section 20." *Id*. at 131.

The holding in *Rosenbach I* remained unchallenged until the Illinois Appellate Court's September 28, 2018 decision in *Sekura* which held that a BIPA claim could be brought without allegations of additional harm. 115 N.E.3d at 1085. Following *Sekura*, BIPA jurisprudence was

thrown into a state of disarray, with the question of what constitutes an actionable claim under BIPA—and thus sufficient "aggrievement" to establish a cause of action—was undecided by the Illinois Supreme Court, the ultimate authority over Illinois statutes. The disparity between the Illinois Appellate Court's Second District and First District opinions was finally settled on January 25, 2019, when the Illinois Supreme Court reversed *Rosenbach I* in *Rosenbach II*. The Illinois Supreme Court held that one is aggrieved, and may bring a claim under BIPA, for technical violations of BIPA, reversing *Rosenbach I* in its entirety. *Rosenbach II*, 129 N.E.3d at 1206. Prior to this summer's final mandate in *Cothron*, the law was also undecided as to whether BIPA claims only accrue once, or they accrue "each time a private entity scans or transmits an individual's biometric identifier or information" without informed consent. *Cothron v. White Castle System*, 2023 IL 128004, ¶ 1, *as modified on denial of reh'g* (July 18, 2023). Given the recent *Cothron* holding that a claim accrues on each use without informed consent, the Court must rely on the law at the time that each such claim accrued.

It is well established that while judicial holdings are "applied in the case before [the court] and are not limited to future cases," that is circumscribed by "compelling reasons" to make the rulings prospectively only, such as: "the newly announced rule replaces one upon which justifiable reliance has been placed." *Brown v. Metzger*, 470 N.E.2d 302, 305 (Ill. 1984). Although "[j]udicial interpretation of a statute does not always necessarily constitute a change in law," where the statute means one thing prior to a judicial interpretation and another afterwards, there is a change in law. *See Marozas v. Bd. of Fire & Police Comm'rs*, 584 N.E.2d 402, 407 (Ill. App. 1991). As highlighted herein, the BIPA landscape over the last twelve months, let alone since 2017, has been volatile as the courts addressed issues of first impression. *Compare id.* ("Where judicial interpretation of a statute is a *common sense* construction based on the *clear wording* of the statute,

it does not have to be applied only prospectively." (emphasis added)) *with Cothron v. White Castle Sys.*, 20 F.4th 1156, 1165 (7th Cir. 2021) (describing the interpretation of BIPA's claim accrual as "novel" and "uncertain"). Therefore, it would be improper to apply recent interpretations of the law retroactively, such that Plaintiff's and putative class members' claims prior to 2019, which at that time were non-actionable, *see Feltmeier*, 798 N.E.2d at 85, are revived by a recent change in the law.

Furthermore, private entities, like JRN, have reasonably relied on the then existing interpretations of BIPA, and allowing retroactive application of the new rule would penalize their good faith efforts, particularly given the fact that Plaintiff had no "vested or matured rights" until the new rule was effective. At earliest, Plaintiff could only have a vested right in alleged technical BIPA violations as of January 25, 2019, as the Seventh Circuit has made clear that "often . . . [statutory] entitlements . . . turn on the passage of time." *United States v. Kimberlin*, 776 F.2d 1344, 1347 (7th Cir. 1995), *superseded by statute on other grounds by United States v. McDowell*, 117 F.3d 974 (7th Cir. 1997); *accord Feltmeier*, 798 N.E.2d at 85. Specifically, the *Kimberlin* Court noted that "if a statute of limitations sets a period of two years, a subsequent statute setting a period of five years presumptively would not apply to a claim that became barred under the old law before the new one was enacted." *Id.* (citations omitted). Consequently, Plaintiff cannot now seek revival of claims that had not accrued until January 25, 2019, without requesting impermissible retroactive effect. *Id.* (citations omitted); *Feltmeier*, 798 N.E.2d at 85; *Brown*, 470 N.E.2d at 305; *Marozas*, 584 N.E.2d at 407.

Precedential decisions that create legal sea change should be applied prospectively, not retroactively. *See 550 Jackson Assocs. v. U.S. Mineral Prods. Co.*, No. 93 C 6638, 1994 U.S. Dist. LEXIS 6807, at *26 (N.D. Ill. May 20, 1994) (commenting that "the crucial date for determining

applicability of a statute i[s] not when the rights were asserted but when the cause of action accrued"); *accord Feltmeier*, 798 N.E.2d at 85. Since *Chevron Oil Co. v. Huson*, 404 U.S. 9 (1971), which was adopted by the Illinois Supreme Court in *Aleckson v. Round Lake Park*, 679 N.E.2d 1224, 1228 (Ill. 1997), courts require proof that new case precedent should apply to past claims utilizing a three-pronged analysis.

The first factor is whether the decision establishes a new principle of law, such as by overruling past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Chevron Oil*, 404 U.S. at 106. The first factor weighs heavily in favor of prospective application of *Rosenbach II*. *Rosenbach II* clearly overruled the Appellate Court's decision in *Rosenbach I*, resolving the issue of the pleading standard for aggrievement and a plaintiff's ability to bring a BIPA claim. Adding *Cothron*, which established claim accrual for each use, is another significant legal development that was not reasonably foreseeable. 2023 IL 128004. Indeed, the Seventh Circuit deemed the issue of BIPA claim accrual "novel[] and uncertain[]," certifying the question to the Illinois Supreme Court, resulting in not one but two hotly divided opinions on the issue. *See Cothron*, 20 F.4th at 1165; *Cothron v. White Castle Sys.*, 2023 IL 128004, ¶¶ 47-67 (Overstreet, J., dissenting); *Cothron*, 2023 IL 128004, *as modified on denial of reh'g* at ¶¶ 69-88 (Overstreet, J., dissenting) (July 18, 2023).

The second factor involves weighing the merits and demerits of retroactive versus prospective application by looking to the history, purpose, and effect of the new rule. *See Chevron Oil*, 404 U.S. at 106. The apparent purpose of *Rosenbach II* is to prevent individuals from suffering harm from their biometrics being misused, and to deter private entities from failing to comply with BIPA. 129 N.E.3d at 1207. As a result of *Rosenbach II*, countless lawsuits have been filed by plaintiffs seeking potentially exorbitant damages. Of course, an additional effect is that following

*Rosenbach II*, many employers implemented policies to comply with BIPA. Regardless of their compliance, however, the employers still face potentially ruinous damages claims which would only be exacerbated by retroactive application of the *Rosenbach II* decision. *See Cothron*, 2023 IL 128004 at ¶ 63 (Overstreet, J., dissenting); *see also id. as modified on denial of reh'g*, at ¶ 86 (Overstreet, J., dissenting).

A retroactive application of *Rosenbach II* would be particularly inequitable given the Illinois Supreme Court's recent finding in *Cothron* that these damages are discretionary, a finding that was neither foreseeable, nor adopted by the entire Court. *See* 2023 IL 128004, *as modified on denial of reh'g,* at ¶ 84 (Overstreet, J., dissenting) (reviewing the majority's accrual construction that "permits recovery for 'each violation,' damages 'appear[]' to be discretionary, class members should be compensated and future violations deterred 'without destroying defendant's business,' and policy concerns exist over 'excessive damage awards'"); *see id.* (observing that "no guidance or criteria remain for who pays nothing and who suffers annihilative liability" and corresponding damages). Application of the new rule retroactively would not serve the "preventative and deterrent" purposes of BIPA, or the new rule established by *Rosenbach II*, as intended. 129 N.E.3d at 1207. It would only punish private entities that have largely implemented BIPA-compliant policies since the *Rosenbach II* decision. Private entities are sufficiently forewarned to comply with BIPA on a forward-looking basis, and application of *Rosenbach II* prospectively ensures that there is sufficient deterring power behind BIPA's statutory damages provisions. The balance of retroactive versus prospective application thus strongly supports a prospective-only application.

The third factor is whether substantial inequitable outcomes would result from retroactive application. *Chevron Oil*, 404 U.S. at 106. As the dissent in *Cothron* acknowledged, BIPA's per-scan liability risks "impos[ing] damages wildly exceeding any remotely reasonable estimate of

harm." 2023 IL 128004 at ¶ 63; *see also id.* at ¶ 86. Moreover, the trial courts lack guidance from the courts or the legislature on how to apply their discretion to reasonably limit unduly punitive awards. *Id.* As such, it would be substantially inequitable to JRN to permit Plaintiff to bring claims against it where JRN justifiably relied on the Appellate Court's then-precedential decision in *Rosenbach I* and the pre-July 2023 *Cothron* accrual analysis. *Accord Kimberlin*, 776 F.2d at 1347. Thus, each of the *Chevron* factors weighs overwhelmingly against retroactive application of *Rosenbach II*.

### III.    Plaintiff's Claims Are Barred By The Doctrine Of *Laches*.

Plaintiff's FAC is also subject to dismissal with prejudice based on the doctrine of *laches*. Under Illinois law, "*laches* is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party." *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 15-16 (Ill. 2016). Unlike a statute of limitations, the doctrine of *laches* "is not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relation of the property and the parties." *Holland v. Richards*, 123 N.E.2d 731, 735 (Ill. 1955). The applicability of *laches* in the BIPA context has even been recognized by an Illinois court, which rejected a motion to strike the affirmative defense of *laches* for a BIPA action. *Figueroa v. Kronos Inc.,* No. 19 C 1306, 2021 WL 5278716, at *1 (N.D. Ill. July 20, 2021).

*Laches* is an affirmative defense that may be determined on a motion to dismiss if the defendant can establish its applicability on the face of the pleadings by a preponderance of the evidence. *See PNC Bank, N.A. v. Kusmierz*, 193 N.E.3d 1196, 1205-06 (Ill. 2022). Simply put, "it must appear that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different than he would have otherwise taken. If the defendant is not injured by the delay, then plaintiff is not guilty of *laches*." *Richter*, 53 N.E.3d

at 16; *accord PNC Bank*, 193 N.E.3d at 1205 ("Two elements must be established for *laches* to successfully defeat a claim: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay.").

Plaintiff was, at all relevant times, aware that she used a time clock that "required" her to scan her finger to track her hours worked. *See* FAC ¶¶ 7, 26-30. In fact, she used the timeclock at least two times per shift, when clocking in and clocking out, for almost six years. *See* FAC ¶¶ 28, 30. Despite her alleged present concerns regarding JRN's collection of her purported biometric information, Plaintiff was aware of the finger-scan element of the timeclock as early as 2015, yet took no action and made no complaints about it until she filed this lawsuit, nearly six years after her first use of the timeclock. *Id.* By "sleeping on [her] rights" for nearly six years, Plaintiff lacks any diligence in asserting her claims. *Hess v. I.R.E. Real Est. Income Fund*, 629 N.E.2d 520, 534 (Ill. App. 1993).

Plaintiff's decision not to complain or in any way address these issues ***when she was employed by JRN***, and her unreasonable delay in bringing this action, has prejudiced JRN by depriving it of the opportunity to address and correct—to the extent necessary—the concerns of Plaintiff and others in real-time. This is exactly the type of result Justice Overstreet foretold in his dissenting opinion in *Cothron*, where he wrote that "under the majority's rule, plaintiffs would be incentivized to delay bringing their claims as long as possible" in order "to keep racking up damages." 2023 IL 128004 at ¶ 60. Plaintiff kept "racking up damages" in this case to JRN's detriment (in the event Plaintiff can successfully prosecute her claims).

Because Plaintiff unreasonably delayed in bringing her claims against JRN, to the prejudice of JRN, she is barred from recovering by the doctrine of *laches*. Given that this is a Court of equity and that Plaintiff has made no allegations in the FAC that her alleged biometric data has been

breached or misused in any way since the time it was purportedly collected by JRN, or that she has been subject to identity theft as a result of JRN's purported collection of her data, this Court should dismiss Plaintiff's claims under Section 15(b) of BIPA with prejudice pursuant to Rule 12(b)(6).

**IV.      Plaintiff's Claims Are Barred By Assumption Of The Risk And Implied Consent.**

Plaintiff can only bring a BIPA claim if her biometric identifiers were retained and disclosed "without [] her ***consent or knowledge***." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (Ill. 2021) (emphasis added). If Plaintiff had actual knowledge that her alleged biometric information was being collected prior to such collection, there is no BIPA violation, since she was able to "control [her] biometric information" and had "the power to say no by withholding consent." *Rosenbach II*, 129 N.E.3d at 1206. This is true regardless of the "methods of communication" by which such knowledge was obtained as BIPA is intended to protect "a secrecy interest." *W. Bend*, 183 N.E.3d at 60. However, as Plaintiff concedes she was aware since 2015 that she was scanning into a "fingerprint-activated timeclock," there can be no claim that she was not aware of the alleged conduct of which she now complains.

Plaintiff untruthfully stated that she "never provided any form of informed consent, in writing ***or otherwise*** . . . allowing [JRN]'s collection, storage, and usage of her biometric information." FAC ¶ 31 (emphasis added). Contrary to her allegations, Plaintiff impliedly consented to the alleged conduct by voluntarily continuing to use the "fingerprint-activated timeclocks" when clocking in and out of work for over five years. *See* FAC ¶¶ 28-30.

The doctrine of primary implied assumption of the risk "is an affirmative defense that arises where the plaintiff's conduct indicates that [s]he 'has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist.'" *Edwards v. Lombardi*, 1 N.E.3d 641, 646 (Ill. App. 2013) (citing *Evans v. Lima Lima Flight Team,*

*Inc.*, 859 N.E.2d 195, 206 (Ill. App. 2007)). It is "based on the theory that a plaintiff will not be heard to complain of a risk which [s]he has encountered voluntarily, or brought upon [her]self with full knowledge . . . of the danger." *Id.* (citations omitted). An individual "may waive a statutory right as long as there was an intentional relinquishment of a known right." *Vill. of Bellwood v. Am. Nat'l Bank & Tr. Co.*, 952 N.E.2d 148, 155 (Ill. App. 2011). Implied waiver occurs where "conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive the right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004).

Here, Plaintiff alleges that she voluntarily "sign[ed] in and out . . . us[ing] fingerprint activated timeclocks" which "collect[ed] and stor[ed] . . . her fingerprints" every time she "clock[ed] in and out of work" for over five years. *See* FAC ¶¶ 7, 17-19, 28, 30. Plaintiff alleges that by providing her purported fingerprints, JRN "collected, captured, obtained, used, and stored" her biometric information. *See* FAC ¶ 47. Taking Plaintiff's allegations as true for the purposes of this Motion only, any alleged risks stemming from the use of the time clock were inherent in the activity that Plaintiff voluntarily chose to undertake—her deliberate and continued use of the "fingerprint activated timeclock" functionality.

It is also worth noting what Plaintiff does not allege. Plaintiff does not allege that she was unaware that she was using a "fingerprint activated timeclock" or that she did not understand how it functioned. Rather, she asserts her understanding of the mechanism and alleged impact of her use of the timeclock. *See* FAC ¶¶ 7, 16-23. Plaintiff also does not allege any concerns she had during the five years she used the "fingerprint activated timeclock" or that she raised any objection during that period. To the contrary, Plaintiff alleges that she voluntarily used the timeclock throughout her employment—for over five years—without any issue or complaint. *See* FAC ¶¶ 28-30.

By continually providing this data despite her knowledge of its alleged subsequent collection and storage, Plaintiff impliedly consented to such collection and retention, as confirmed by courts across the country. *See, e.g.*, *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014) (holding that a privacy claim is defeated and implied consent is established in the "typical case" by "the user's continued use of communication device or system after receiving notice that his or her communications may be" collected (citing *Griggs-Ryan v. Smith*, 904 F.2d 112,117-18 (1st Cir. 1990) (holding that plaintiff impliedly consented to the monitoring of his phone calls because he knew they would be monitored: implicit consent is demonstrated where a party knows" of data collection))); *Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842-JST, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023) (noting that in the data privacy context, "courts [] have found that users of applications [gave] implied consent through their conduct when they continued to use the applications despite exposure to materials that disclosed the challenged practices"); *Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 266 (N.D. Cal. 2016) (holding that a user gave "implied consent" to data collection "[e]ven if [defendant] Facebook hid its practice, as long as users heard about it from somewhere and continued to use the relevant features").

Markedly, there is nothing in either the text of BIPA or the jurisprudence interpreting it that bars the application of the universal doctrine of implied consent. *See Figueroa*, 2021 WL 5278716 at *1 ("To the court's and the parties' knowledge, no Illinois court has addressed the question whether express or implied consent in a form other than a written release is sufficient to satisfy Sections 15(b) or 15(d)" of BIPA."). To JRN's knowledge, no case since *Figueroa* has been decided that has answered the precise question of "whether express or implied consent in a form other than ***a written release*** is sufficient." *Id.* (emphasis added).

The Illinois Supreme Court in *Cothron* clarified that BIPA is *not* a strict liability statute, as damages are discretionary. 2023 IL 128004 at ¶ 42 (citing 740 ILCS 14/20 (detailing the amounts and types of damages that "a prevailing party *may* recover")); *Watson v. Legacy Healthcare Fin. Servs., LLC*, 196 N.E.3d 571, 582 n.4 (Ill. App. 2021) (concluding that damages under the Act are discretionary rather than mandatory)). *See also Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2023 U.S. Dist. LEXIS 113278, at \*29 (N.D. Ill. June 30, 2023)*. Compare Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. Sept. 30, 2023); *Snider v. Heartland Beef*, 479 F. Supp. 3d 762, 772-73 (C.D. Ill. 2020), *with Figueroa*, 2021 WL 5278716 at \*1 (N.D. Ill. July 20, 2021), *Cothron*, 2023 IL 128004 at ¶ 42 (finding damages under BIPA are discretionary, based on language of 740 ILCS 14/20).

Unlike in *Snider*, JRN maintains that Plaintiff **did** implicitly consent to encounter a known risk. 479 F. Supp. 3d at 773 (citing *Russo v. Range, Inc.*, 395 N.E.2d 10, 13 (Ill. App. Ct. 1979)); *see also supra* section IV, n. 4. Moreover, these cases are non-precedential and provide no recognition or reliance on Illinois Supreme Court's development of these issues, and thus should not be considered. *See Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1020 (S.D. Ill. 2020) ("The Seventh Circuit has repeatedly reminded courts and counsel that district court opinions have no precedential value. Rather than relying on district court cases for their precedential value, the Court acknowledges these cases because they recognize the development of the Illinois Supreme Court's [interpretation and analysis of Illinois law].").[3]

Notably, these cases further conflate the issues of assumption of the risk and implied consent in presuming, without foundation or analysis, that BIPA only recognizes consent if

---

[3] To the extent the Court relies on these non-precedential cases, JRN maintains that even under those decisions, Plaintiff has failed to state a claim (not even a speculative claim) upon which relief may be granted, and her claim—or at least her request for damages—must be dismissed or stricken. *Twombly*, 550 U.S. at 555.

embodied in a written release. This assumption is directly contradicted by the Illinois Supreme Court in *West Bend* that stated a plaintiff can only bring a BIPA claim if her biometric identifiers were retained and disclosed "without [] her ***consent or knowledge***." 183 N.E.3d at 58 (emphasis added). As Plaintiff implicitly consented to the capture, collection, and retention of her alleged biometric information, she has assumed the risk of which she now complains. *See Edwards*, 1 N.E.3d at 646; *see also Russo*, 395 N.E.2d at 13 ("[A] plaintiff cannot elude" application of the assumption of the risk doctrine "with protestations of ignorance in the face of obvious danger."). As such, Plaintiff's claims fail as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

## V.        Plaintiff Fails To Demonstrate Entitlement To The Relief She Seeks.

"In order to recover damages based on 'willful and wanton conduct,' a plaintiff must plead and prove the basic elements of a negligence claim, i.e., that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury, and must additionally allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Lewis v. Hirschbach Motor Lines, Inc.*, No. 3:20-cv-1355-JPG, 2022 U.S. Dist. LEXIS 39945, at *7 (S.D. Ill. Mar. 7, 2022). Plaintiff's FAC is fatally devoid of allegations of negligent, reckless, or intentional conduct on the part of JRN. In fact, Plaintiff only references the terms "negligent" and "reckless" when reciting portions of BIPA, in conclusory statements regarding JRN's alleged conduct, and in her Prayer for Relief requesting "[a]n award of statutory damages of $5,000 for each intentional or reckless violation of BIPA . . . or, alternatively, statutory damages of $1,000 per negligent violation of [] BIPA." *See* FAC at 13; ¶¶ 24, 36, 51-54. Plaintiff's conclusory allegations that JRN negligently, recklessly, or intentionally failed to comply with BIPA are insufficient to plead a claim **upon which relief may be granted**, and should be dismissed. To the extent that the Court finds Plaintiff can overcome JRN's Motion

to Dismiss, in the alternative, JRN moves to strike Plaintiff's request for monetary, injunctive, and declaratory relief as speculative pursuant to Rule 12(f), as highlighted *supra* at Introduction, and *infra* at section VII (relating to equitable relief).

As set forth above, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face" and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 570, 555. "[C]ourts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks*, 578 F.3d at 581. Not only does Plaintiff fail to plead JRN's negligence or recklessness, but the factual record forecloses such an argument. As Plaintiff concedes, she was fully aware of JRN's purported biometric information collection, capture, and storage at all relevant times. *See* FAC ¶¶ 7, 17-19, 28, 30. This implied consent alone defeats Plaintiff's allegations of intentionality. *See Figueroa*, 2021 WL 527816, at *2 (holding that plaintiff's entitlement to statutory damages for a negligent or reckless violation would be settled by whether defendant "believed in good faith that Plaintiffs' implied [] consent to the collection and dissemination of their biometric information satisfied [BIPA's] consent requirements").

Plaintiff's failure to allege negligent, reckless, or intentional conduct further forecloses the propriety of damages as BIPA's text makes clear that its ***discretionary*** damages are proper ***only*** when a defendant negligently, recklessly, or intentionally violates the statute. 740 ILCS 14/20; *see also Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (BIPA "only subject violators to statutory damages if there is negligence or willfulness."); *Burlinski v. Top Golf USA, Inc.*, No. 19-cv-006700, 2020 WL 5253150, at *7 (N.D. Ill. Sept. 3, 2020) ("[S]tatutory damages [] are not [] automatic or predetermined; the Plaintiffs still need to prove that Topgolf acted intentionally or recklessly . . . .").

Plaintiff must plead facts from the onset of the case that show she and the putative class are entitled to such damages and failure to do so should result in dismissal of the claim as there is no relief the Court may provide. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737 (7th Cir. 2014) (granting motion to dismiss where plaintiff failed to establish "a right to relief above the speculative level" for statutory claims); *Jimenez v. Kauffman Eng'g, LLC*, No. 22 CH 0016 (19th Jud. Cir. Ct., Lake Cnty.) (June 16, 2022 Tr. at 17, 22) (attached as Exhibit 1) (striking allegations when "there's nothing in that complaint that alleges anything that was reckless or willful other than the word [] put in there 'reckless' and 'willful'"); *Webster v. Windsor Ests. Nursing & Rehab*, No. 2019 CH 11441 (Cir. Ct. Cook Cnty. Nov. 19, 2020) (dismissing claims of reckless and intentional conduct lacking factual support); *Navarette v. Josam Acquisitions*, No. 2019 CH 14368 (Cir. Ct. Cook Cnty. Mar. 31, 2021) (same). Plaintiff's Complaint fails to meet this basic pleading requirement for standing—it neither alleges facts, conclusory or otherwise, which show that JRN negligently, recklessly, or intentionally violated BIPA, the necessary prerequisite to monetary relief, nor that she is entitled to any damages whatsoever.

The Illinois Supreme Court recently held that damages under BIPA are "discretionary." *See Cothron*, 2023 IL 128004 at ¶ 42. BIPA provides that an individual **may** recover liquidated damages of up to $1,000 for negligent violations of BIPA, or up to $5,000 for proven reckless or intentional violations. 740 ILCS 14/20. Such discretion regarding damages warrants requiring, at the earliest opportunity, facts to support allegations of negligence or recklessness. That is particularly true here, where JRN's due process rights are best served by having clear notice of the allegations that it must defend against. Here, Plaintiff alleges that these finger scans occurred at least twice a day, on a daily basis for each of JRN's "hundreds of employees." *See* FAC ¶ 52. Thus, despite Plaintiff's admitted lack of actual damages, FAC ¶ 18, JRN may face "staggering" and

"potentially crippling financial liability," *Cothron*, 20 F.4th at 1165, which may prove to be "annihilative," *Cothron*, 2023 IL 128004 at ¶ 61 (Overstreet, J., dissenting); *id. as modified on denial of reh'g*, at ¶ 84.

Considering the massive range of potential damages, it is critical that Plaintiff plead sufficient facts so that JRN is put on proper notice of the financial burden it may face. Procedural due process bars an action that infringes upon a protected interest when it is arbitrary because it was not preceded by procedural safeguards. *Wingert*, 131 N.E.3d at 542. Here, the procedural safeguard of adequately informing a defendant of the claims asserted against it is vital to upholding JRN's procedural due process rights.

**VI.     Plaintiff's Claims Violate Due Process And Seek Unconstitutionally Excessive Fines And Thus Should Be Dismissed Under Rule 12(b)(6).**

Plaintiff's BIPA claims violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as well as the Due Process Clause of Article I, Section 2 of the Illinois Constitution. The Fourteenth Amendment prohibits the imposition of a grossly excessive award on a tortfeasor. *BMW of N. Am. v. Gore*, 517 U.S. 559, 562 (1996) ($2 million punitive damages was grossly excessive where there were only $4,000 in compensatory damages); *Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) (liability ranging from $29.4 million to $294 million in statutory damages where plaintiff alleges no actual damages would be "shocking" and "grossly excessive"). Plaintiff seeks to recover no less than $5,000,000 in damages, resulting from purported technical violations of a statute without a showing of any injury. Such an award would be shocking and grossly excessive, and thus violate JRN's due process rights. As pled, Plaintiff's BIPA claims are unconstitutional and should be dismissed with prejudice.

**VII.      Plaintiff Cannot State A Claim To Support Her Requested Declaratory And Injunctive Relief.**

As Plaintiff fails to sufficiently plead her request for injunctive or declaratory relief, and she fails to demonstrate any entitlement to monetary damages, her FAC should be dismissed for failure to state a claim upon which relief can be granted. *See, e.g.*, *supra* section V. As discussed *infra*, JRN moves in the alternative to strike Plaintiff's requested relief pursuant to Rule 12(f).

Plaintiff cannot pursue her requests for declaratory and injunctive relief because she has not worked for JRN since April 2021. *See* FAC ¶ 30. Under Illinois law, "a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Rather, in seeking such prospective relief, the plaintiff must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). *See also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). The Illinois courts have been clear that former employees—like Plaintiff—"lack standing to pursue prospective declaratory and injunctive relief related to the employer's practices if they are no longer in 'danger of future harm' from such practices." *Williams v. State Farm Mut. Augo. Ins. Co.*, No. 20 CV 1121, 2023 U.S. Dist. LEXIS 157276, at *10-11 (N.D. Ill. Sept. 6, 2023) (quoting *Brown v. Cnty. of Cook*, 549 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008) (former employee lacked standing to seek permanent injunctive relief enjoining defendants from engaging in certain employment practices)). Because Plaintiff is unable to plead or seek her requested relief, her request for that relief should be dismissed pursuant to Rule 12(b)(6), or in the alternative, stricken pursuant to Rule 12(f).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff D'Lisa Williams' claims and the claims of the putative class against Defendant JRN, Inc., pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice.

Dated:  October 5, 2023

Respectfully Submitted,

JRN, INC.

By: */s/ Melissa A. Siebert*
Melissa A. Siebert
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel.: (312) 474-7981
Fax: (312) 382-8910
msiebert@cozen.com

Lauren M. Gibbons (*pro hac vice* forthcoming)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
lgibbons@cozen.com

Kamille E. Perry (*pro hac vice* forthcoming)
Cozen O'Connor
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
Tel.: (212) 908-1330
Fax: (646) 880-3650
kperry@cozen.com

*Counsel for Defendant JRN, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa A. Siebert, an attorney, hereby certify that on October 5, 2023, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the Court's CM/ECF system, which will serve electronic notice upon all parties of record.

*/s/ Melissa A. Siebert*
