## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTH DISTRICT OF ILLINOIS

**D'LISA WILLIAMS,** individually, and on
behalf of all others similarly situated,

    *Plaintiff,*

*v.*

**JRN, INC.,** a Tennessee corporation,

    *Defendant.*

Case No. 3:22-cv-01253

Hon. Nancy J. Rosenstengel

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff D'Lisa Williams ("Williams" or "Plaintiff") brings this class action against

Defendant JRN, Inc. ("JRN" or "Defendant"), challenging JRN's violations of the Illinois

Biometric Information Privacy Act ("BIPA" or "the Act"), 740 ILCS 14/1 *et seq.* Specifically,

Williams had a job that required her to "clock in" and "clock out" using a biometric timeclock

provided by her employer, JRN. The timeclock worked by scanning Plaintiff's fingerprint each

time she reported to and left work. Plaintiff filed the instant lawsuit to challenge JRN's practice

of capturing and storing her fingerprint without informed consent, in violation of Illinois law.

In response to her Complaint, and instead of taking responsibility for its failure to comply

with BIPA, Defendant moved to dismiss the Complaint, setting forth a host of supposed reasons

to dismiss on the pleadings. Specifically, JRN claims that: (1) certain claims are barred by the

statute of limitations and/or a safe harbor (2) the doctrines of laches and assumption of the risk

preclude the claims, (3) the Complaint is deficient because Plaintiff supposedly fails to plead that

1

JRN's violations were intentional, reckless, or negligent, (4) the claims somehow violate due process, and (5) Plaintiff is precluded from seeking declaratory or injunctive relief. As explained below, each of Defendant's arguments fall flat and should be rejected.

## II.   LEGAL STANDARD

BIPA requires employers who collect biometric information, such as fingerprint scans, to obtain written informed consent from any person whose information will be collected. 740 ILCS § 14/15. The statute is designed to protect employees against the threat of irreparable privacy harms, identity theft, and other economic injuries arising from the increasing use of biometric information. *Bryant v. Compass Grp. USA, Inc.*, No. 20-1443, 2020 WL 2121463, at *1 (7th Cir. May 5, 2020). "Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded." *Rosenbach v. Six Flags Entm't Corp*, 2019 IL 123186, ¶ 37, 129 N.E.3d 1197, 1207.

"Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS § 14/5(c). "[S]ocial security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). Accordingly, BIPA was enacted to ensure "[t]he public welfare, security, and safety" of Illinois residents "by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS § 14/5(g). It "vests in individuals and customers the right

to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." *Rosenbach*, 2019 IL 123186, ¶ 34.

BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifier or information, unless it first informs the subject of the collection, its purpose, and the duration of storage, and then obtains written consent to the same. 740 ILCS 14/15(b). Victims of BIPA violations may sue for statutory damages of $1,000 per negligent violation, or $5,000 per intentional or reckless violation, plus attorneys' fees, costs, and injunctive relief. 740 ILCS 14/20.

## III.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### A.  Plaintiff Does Not Attempt to Bring Claims Outside of the Statute of Limitations

Defendant's first argument for dismissal is that any BIPA claims Plaintiff or members of the alleged Class may have that occurred prior to June 13, 2017 (five years prior to the filing of the Complaint) are untimely.

Under Illinois Supreme Court precedent, "the five-year limitations period contained in section 13-205 of the Code controls claims under [BIPA]." *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 42, 216 N.E.3d 845, 854. Additionally, "we reject [the defendant's argument]

that we should limit a claim under section 15 to the first time that a private entity scans or transmits a party's biometric identifier or biometric information . . .[n]o such limitation appears in the statute. *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 39, 216 N.E.3d 918, 928, *as modified on denial of reh'g* (July 18, 2023).

In other words, BIPA is a "per-scan" statute. An employer violates the law each and every time it captures and stores a biometric identifier (such as a fingerprint, as is the case here) in a manner that is not in compliance with BIPA. So, while Plaintiff agrees that she cannot recover for violations that occurred prior to June 13, 2017, that doesn't require dismissal of her lawsuit. Plaintiff alleges that Defendant's BIPA violations as to her as an individual continued until April 2021, safely inside the five-year statute of limitations. Thus, she is well within her rights to proceed as to violations from June 13, 2017 through the date notice is disseminated to the Class after certification.

### B. Defendant's "Safe Harbor" Argument Fails—Lack of Guidance Does Not Immunize JRN From Liability

Next, JRN claims that Plaintiff cannot state a claim for any violations prior to January 2019, due to a supposed lack of controlling authority providing guidance that its actions were unlawful until that time. (Def. Mot. At 3-9.) While JRN spends the better part of its Motion arguing this point, the argument fails as a matter of law and is largely irrelevant in any case.

First, as a general matter, and as discussed above, BIPA involves a five-year statute of limitations. Given that Plaintiff filed her case on June 13, 2022, this dates back to June 13, 2017. Even if the Court were to further limit the statute of limitations to only include BIPA violations from January 2019 through the present (it shouldn't), this would not dispose of the case, as Plaintiff alleges her biometric information was captured and stored without informed, written

consent up until April 2021.

Moreover, under BIPA:

Any person aggrieved by a violation" has a private right of action. 740 ILCS §
14/20. In *Rosenbach v. Six Flags Entm't Corp.*, 432 Ill.Dec. 654, 129 N.E.3d 1197,
1206 (Ill. 2019), the Illinois Supreme Court explained "when a private entity fails
to comply with one of [s]ection 15's requirements, that violation constitutes an
invasion, impairment, or denial of the statutory rights of any person or customer
whose biometric identifier or biometric information is subject to the breach." "The
violation, in itself, is sufficient to support the individual's or customer's statutory
cause of action." *Id.* Illinois Supreme Court precedent binds this Court. *See Allstate
Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("the task of the federal
court sitting in diversity is to ascertain the substantive content of state law as it [ ]
has been determined by thehighest court of the state"). **Plaintiffs need not allege
anything "beyond violation of his or her rights under the Act, in order to
qualify as an 'aggrieved' person and be entitled to seek liquidated damages
and injunctive relief[.]"** *Rosenbach*, 432 Ill.Dec. 654, 129 N.E.3d at 1207. Indeed,
all Plaintiffs must do is allege that Defendants collected, captured, purchased,
received or obtained their fingerprints without complying with BIPA's
requirements. Accordingly, for purposes of a 12(b)(6) motion, Plaintiffs pled
sufficient facts to state a cause of action against Defendants.

*Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1018 (S.D. Ill. 2020)

(emphasis added.)

JRN's main gripe appears to be that there was a brief period of time, years ago, in which

some courts, citing *Rosenbach I*, held that allegedly "technical" violations of BIPA did not give

rise to an actionable cause of action. Similarly, JRN claims that, before *Cothron*, the "per-scan"

accrual of violations was unclear.

It is worth noting that, as an initial matter, this does not change JRN's underlying

liability. In other words, even under JRN's theory, its conduct always violated BIPA, it was just

unclear (again, under JRN's theory) whether a person could sue for damages, and whether those

damages piled up with each scan. Its responsibility to obtain consent was always the same.

Moreover, and more importantly, BIPA is not ambiguous. Where the legislature's intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). And when "the meaning of the words seems to us to be intelligible upon a simple reading, ... we shall spend no time upon generalities concerning the principles of [statutory] interpretation." *United States v. M.H. Pulaski Co.*, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).

Simply stated, lack of authority is not the test. As the Ninth Circuit stated while deciding whether a violation of the Fair Credit Reporting Act could be willful when no appellate court had yet opined on the matter:

> No court of appeals has spoken to the issue of whether a disclosure document provided pursuant to Section 1681b(b)(2)(A) may permissibly include a liability waiver. Nor has an administrative agency promulgated authoritative guidance on the issue.
>
> A lack of "guidance," however, does not itself render MI's interpretation reasonable. The Supreme Court has analogized the assessment of whether a FCRA violation may give rise to a claim for statutory damages to the determination of whether government employees may be held personally liable in suits for damages. *Safeco*, 551 U.S. at 70, 127 S.Ct. 2201. In the qualified immunity context, we have held that "when an officer's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) (internal quotation marks omitted). Similarly, at least one circuit court of appeals has concluded that, in the FCRA context, a "lack of definitive authority does not, as a matter of law, immunize [a party] from potential liability" for statutory damages. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010).
>
> **Despite the apparent dearth of guidance on the issue at the time M-I procured Syed's consumer report, M-I's inclusion of a liability waiver in the statutorily mandated disclosure document comports with no reasonable interpretation of 15 U.S.C. § 1681b(b)(2)(A).** Therefore, we conclude that MI's interpretation was

6

"objectively unreasonable."

*Syed*, 853 F.3d 492, 503-04 (9th Cir. 2017) (emphasis added). The Court went on to hold that "[n]otwithstanding that we are the first federal appellate court to construe Section 1681b(b)(2)(A), this is not a 'borderline case.' . . . [a] employer "whose conduct is first examined under [a] section of the Act should not receive a pass because the issue has never been decided." *Id.*

At the end of the day, lack of guidance from appellate courts does not immunize defendants from liability when a statute is unambiguous, as BIPA is. This is particularly true in a case such as this, where the underlying violation was never in dispute, even under Defendant's argument—the only questions were the ability to sue and the accrual of damages.

As a final point on this issue, JRN argues that Williams has failed to plead negligence or recklessness, but "the need to demonstrate negligence intentional action, or recklessness impacts a plaintiff's recovery, not the underlying substantive violation of BIPA." *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020). As such, JRN seeks to add a pleading requirement into the statute that is simply not there. JRN's Motion should thus be denied on this basis.

### C.  Defendant's Laches Defense Is Premature And Inappropriate at This Stage

For its next argument for dismissal, JRN contends that the Complaint should be dismissed under the doctrine of laches. This argument also fails.

"Laches . . . is both an affirmative defense—thus unsuited for resolution on a Rule 12(b)(6) motion—and an equitable doctrine—thus dependent on sensitive factual context. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (explaining why, under federal

pleading standards, equitable affirmative defenses like acquiescence and laches are "not ordinarily susceptible to resolution at the pleading stage"). "Courts rarely dismiss claims based upon affirmative defenses, such as statute of limitations, at the pleadings stage 'since a complaint need not anticipate and overcome affirmative defenses'." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "Like statute of limitations, laches is an affirmative defense, and dismissal is only appropriate if 'the validity of the defense is apparent from the face of the complaint and so unmistakable that the action is frivolous.' *Suggs v. United States*, 256 F. App'x. 804, 805 (7th Cir. 2007) (citing *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002))". To demonstrate that laches bars Plaintiff's claims, Defendant must show: (1) lack of diligence by the plaintiff; and (2) prejudice to the defendant. *Cannon v. Univ. of Health Scis./The Chicago Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983).

Other than a citation to a dissenting Opinion in *Cothron*, JRN provides no support for its argument that Williams' claims are barred by the doctrine of laches. This is because the affirmative defense of laches is both unsuitable for determination at the pleadings stage, and because JRN cannot meet the *Cannon* factors of lack of diligence and prejudice. There is nothing in the Complaint that could be construed as satisfying either element—this is why adjudication of the affirmative defense is premature.

Finally, JRN's argument that it was "deprive[ed] of the opportunity to address and correct" its BIPA violations in "real-time" misses the point. JRN is a sophisticated corporation with ample opportunity to retain counsel and ensure compliance with BIPA prior to collecting and storing its employees' fingerprints. It need not wait for its employees to sue to be put on notice of its obligations. Its Motion should be denied.

**D.      JRN's "Assumption of the Risk" and "Implied Consent" Arguments Fair No Better**

Continuing its "kitchen sink" approach to its Motion, JRN next argues that Plaintiff's claims are barred by the affirmative defenses of assumption of the risk and implied consent. In other words, JRN attempts to shift the blame for its violations of BIPA onto the victim, Williams.

This argument ignores BIPA's statutory text. BIPA prohibits an employer such as JRN from collecting biometric information "unless it first … receives a written release." 740 ILCS § 14/15. Permitting the employer to rely on an "implied consent" defense would essentially read the requirement of a written release out of the statute.

As to assumption of the risk, this is again an affirmative defense that's premature for resolution at this stage. But, in any event, the affirmative defense requires JRN to show that Wiliams "has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist." *Edwards v. Lombardi,* 2013 IL App (3d) 120518, ¶ 18, 1 N.E.3d 641, 646. Tellingly, JRN never argues that Williams signed a written consent as required by the statute. Rather, it argues that Williams assumed the risk by showing up the work each day and clocking in. This improperly shifts the burden onto the employee.  As the Seventh Circuit has held, BIPA "requires collectors of [biometric information] to obtain the written informed consent of any person whose data is acquired. This regime is designed to protect consumers against the threat of irreparable privacy harms, identity theft, and other economic injuries arising from the increasing use of biometric identifiers and information by private entities*." Bryant v. Compass Grp. USA, Inc.*, No. 20-1443, 2020 WL 2121463, at *1 (7th Cir. May 5, 2020). Thus, the responsibility for compliance is on the employer, not the

employee. This is Black letter law. *See* Restatement (Second) of Torts § 496F (1965) ("There are other statutes which, although they do not expressly so provide, are construed to have that effect, because the purpose of the legislature is found to be to place the entire responsibility for the safety of the plaintiff upon the defendant, and that purpose would be defeated if the defense were available.")

Finally, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense— may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Applied here, JRN would need to show that the Complaint specifically admits that Williams "appreciated the specific risk which caused the injury." *Russo v. Range, Inc*., 76 Ill. App. 3d 236, 238-39, 395 N.E.2d 10, 13 (1979). JRN points to no such allegations, because there are none.

As a final point, BIPA requires *express* consent. That it, the statute requires that the Plaintiff be informed in writing prior to the collection of her biometric information, that the Plaintiff be informed of the purpose and length of time her biometric information will be retained (in writing), and that the Plaintiff execute a written release. BIPA § 15(b). Permitting an implied consent standard flies in the face of the statute, which requires express consent. See *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (noting, in the Telephone Consumer Protection Act context, that "the rule that the Court had erroneously found in the FCC 2008 Order amounted to a version of implied consent. But that is not what the statute requires".). Once again, JRN's Motion should be denied.

**E.      Plaintiff Has Demonstrated Entitlement To Relief**

For its next argument, JRN claims that Plaintiff has failed to plead negligence, recklessness, or intentional conduct. (Def. Mot. at 15-18.)

The right of action created by the Act provides that "**[a]ny person aggrieved by a violation of this Act** shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20 (emphasis added). The statute further provides that, for each violation, the prevailing party may recover: (1) $1,000 or actual damages for any negligent violation; (2) $5,000 or actual damages for any intentional or reckless violation; (3) reasonable costs and attorneys' fees; and (4) injunctive and any other relief. *Id.*

To hear Defendant tell it, the specification of liquidated damages for negligent, reckless, or intentional violations supposedly amounts to an element of Plaintiff's claim. This interpretation misses the mark. While it may be true that the availability of liquidated damages detailed in the statute is limited to violations that are negligent, reckless, or intentional, this consideration is separate from the standard for stating a claim:

> Plaintiff argues that she is not required to assert facts regarding . . . negligent, reckless, or intentional actions to bring a BIPA cause of action. Plaintiff is correct.
>
> . . . BIPA provides for a private right of action for "***any*** person aggrieved by a violation" of the statute. The Illinois Supreme Court has explained that "when a private entity fails to comply with one of Section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Rosenbach* [*v. Six Flags Ent. Corp.*], 432 Ill. Dec. 654, 129 N.E.3d at 1206. "The violation, in itself, is sufficient to support the individual's or customer's

11

statutory cause of action." *Id.* **The "negligent" and "intentionally and recklessly" standards come into play when determining remedies**, with negligent violations worth $1,000 in liquidated damages (or actual damages, if greater) and intentional or reckless violations worth $5,000 in liquidated damages (or actual damages, if greater). **Additional remedies of attorneys' fees, costs, and injunctive relief are also available, and the statutory language does not limit these remedies to only negligent, intentional, or reckless violations**. *Id.* § 14/20(3), (4); *see also Cothron* [*v. White Castle Sys., Inc.*]*,* 467 F.Supp.3d at 614–16 [(N.D. Ill. 2020)] ("[I]f the complaint plausibly pleads violations of Section 15(b) and Section 15(d)—which the Court finds that it does—then, even absent specific allegations about White Castle's mental state . . . , it has stated a claim entitling Ms. Cothron to litigation expenses and injunctive relief under Section 20, whether or not she proves an entitlement to damages based on negligent, reckless, or intentional conduct.").

Plaintiff's argument mirrors the analysis above. To allege a claim that Defendant Pathfinder violated BIPA, all she must do is allege that Defendant collected, captured, purchased, received, or obtained her fingerprints without complying with BIPA's requirements. As Plaintiff explained, and as other courts have outlined, **the references to negligent, reckless, and intentional violations only relate to what the prevailing party may recover for each violation**, which is not before the Court presently. Accordingly, for purposes of a 12(b)(6) motion, Plaintiff has pled sufficient facts to state a cause of action . . . .

*Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 906–07 (S.D. Ill. Aug. 19, 2020) (emphasis added). In other words, while some courts in Illinois have stopped short of applying the term, portions of BIPA impose strict liability. *Compare, e.g.*, *Mora v. J&M Plating, Inc.*, 2022 IL App (2d) 210692, ¶ 36–46 (noting defendant's argument that strict liability is unsupported, but otherwise reversing summary judgment and rejecting defendant's arguments without analyzing strict liability); *with Vaughan v. Biomat USA, Inc.*, No. 20-CV-4241, 2022 WL 4329094, at *12 (N.D. Ill. Sept. 19, 2022) ("BIPA Sections 15(a) and (b) impose strict liability; an alleged violator's state of mind is not an element of either claim."); *Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 634 (C.D. Ill. 2021) ("[N]owhere in Section

12

14/15 does BIPA mention any mental state as an element for a violation."); *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020) ("BIPA imposes liability ... regardless of the violator's state of mind.").

Plaintiff has met her pleading requirement here—she alleges that Defendant violated Section 15(b) by collecting her biometric information without first informing her in writing of the collection or its length and purpose and without obtaining a written release. As outlined above, the violation itself "is sufficient to support the . . . statutory cause of action"—alleging that Defendant collected her fingerprints without complying with BIPA is "all she must do." *Stauffer*, 480 F. Supp. 3d at 907 (quoting *Rosenbach*, 432 Ill. Dec. at 663). Plaintiff also seeks "injunctive and equitable relief" pursuant to Section 20(4) and "reasonable attorneys' fees and costs" under Section 20(3). Neither of these remedies are limited to violations that are negligent, reckless, or intentional. *See* 740 ILSC 14/20(3), (4); *Stauffer*, 480 F. Supp. 3d at 907. The question of statutory damages owed to Plaintiff and the Class is a question for another day; it is not a basis for dismissal.

Nevertheless, though it isn't required, Plaintiff *does* allege facts to support her allegations that JRN's BIPA violations were negligent, if not reckless or intentional. On a motion to dismiss, all reasonable inferences must be drawn in favor of Plaintiff, and the facts alleged in the Complaint, taken as true, support the reasonable inference that Defendant's purported BIPA violations were not only negligent but reckless or intentional. *See Basta*, 2022 IL App (2d) 210234 at ¶ 33.

13

### F.    A Damages Determination Is Premature

As with many of its arguments in its Motion to Dismiss, JRN prematurely argues that

Plaintiff's claims violate due process and seek excessive fines. (Def. Mot. at 18.) But this is a

question for a later day. "The Court agrees with BNSF that a damages award [in a BIPA case]

after a finding of liability is a question for the jury." *Rogers v. BNSF Ry. Co.*, No. 19 C 3083,

2023 WL 4297654, at *9 (N.D. Ill. June 30, 2023). Indeed, a class has not been certified yet, and

there has been no discovery as the exact scale of JRN's liability. The Court therefore has no basis

to decide that any judgment in this case would be "grossly excessive." Certainly not as to violate

the Constitution. This is simply not an appropriate inquiry for a motion to dismiss.

### G.    Declaratory and Injunctive Relief Is Available Under BIPA

For its final argument, JRN argues that Williams is not entitled to seek declaratory and

injunctive relief. (Def. Mot. at 19.) In reality:

> Under 740 ILCS 14/20(1)(2), a party may recover damages over $1,000 for
> negligent violations and over $5,000 for reckless or willful violations. Such
> damages, however, constitute but two of multiple remedies that a plaintiff may
> obtain for a BIPA violation. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th
> Cir. 2015) ("BIPA contains four remedies available to prevailing plaintiffs in BIPA
> cases"); *Sosa v. Onfido, Inc.*, 20-cv-4247, 2022 WL 1211506, at *9 (N.D. Ill. Apr.
> 25, 2022) ("liquidated damages are requests for a particular type of remedy should
> [Plaintiff] prevail on his underlying BIPA claim"); *Cothron v. White Castle Sys.,
> Inc.*, 467 F.Supp.3d 604, 615 (N.D. Ill. 2020) (holding that statutory damages,
> declaratory relief, and injunctive relief are various forms of relief for a single
> claim).

> Here, in addition to monetary damages, Plaintiff also seeks an injunction against
> Brainshark, reasonable attorneys' fees and costs, and other relief deemed
> appropriate. [1] ¶ 47. Thus, even if Plaintiff failed to adequately allege a basis for
> monetary damages for negligent, intentional, or reckless conduct, that does not
> warrant dismissal of her BIPA claims. ***Davis v. Passman*, 442 U.S. 228, 239, 99
> S.Ct. 2264, 60 L.Ed.2d 846 (1979) ("a 'cause of action' is analytically distinct"
> from, and secondary to, the question of "what relief, if any, a litigant may be
> entitled to receive."). Courts repeatedly hold that a plaintiff need not "show**

> his entitlement to" the "precise forms of relief" that he seeks at the pleading
> stage. *Sosa*, 2022 WL 1211506, at *10; *Jones v. Butler*, 663 F. App'x 468, 470
> (7th Cir. 2016) (holding that a demand for relief is not part of the claim);
> *Cothron*, 467 F. Supp. 3d at 615 ("Rule 12(b)(6) does not require [Plaintiff] to
> plead the facts that will determine the amount of actual damages she may be
> entitled to recover.").

*Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 531 (N.D. Ill. 2022) (emphasis added.) For this

reason as well, JRN's Motion should be denied.

## IV.    CONCLUSION

The Court should deny JRN's motion to dismiss and award any such relief as it deems

necessary and just.

Respectfully submitted,

**D'LISA WILLIAMS**, individually and on behalf
of all others similarly situated,

Dated: November 6, 2023          */s/ Patrick H. Peluso*

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on November 6, 2023.

*/s/ Patrick H. Peluso*