**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

D'LISA WILLIAMS,
individually and on behalf of all others
similarly situated,

        Plaintiff,

v.

JRN, INC.,

        Defendant.

Case No. 3:22-CV-1253-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff D'Lisa Williams ("Williams") brings this putative class action against her former employer, Defendant JRN, Inc. ("JRN"), for its alleged collection, storage, and use of its employees' fingerprints without informed consent as required by section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"). (Doc. 10). JRN filed a Motion to Dismiss the Amended Complaint (Doc. 26), which has been fully briefed and argued. For the reasons set forth below, the Court denies the majority of JRN's motion to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

JRN is a Tennessee-based company that operates Kentucky Fried Chicken, Taco Bell, and Pizza Hut franchises in the Southeast and Midwest regions of the United States. (Doc. 10 at ¶ 1). Williams worked at JRN's Kentucky Fried Chicken restaurant located in Harrisburg, Illinois, from September 2008 to April 2021. (*Id.* at ¶ 27).

Around 2015 or 2016, JRN instituted a fingerprint timeclock, which employees

were required to use to clock in and out of work. (*Id.* at ¶¶ 17, 28-29). Williams alleges

that, in violation of BIPA section 15(b), JRN collected, stored, and used its employees'

biometric information—their fingerprints—without informing the employees that it

would do so or obtaining their express written consent. (*Id.* at ¶¶ 19-22). JRN also never

informed its employees of the specific purpose or length of time for which their

fingerprints would be collected, stored, and used. (*Id.*). Williams claims that JRN required

her to use the biometric timeclock until her last day of employment in April 2021. (*Id.* at

¶ 30).

Williams filed a First Amended Class Action Complaint ("Amended Complaint")

(Doc. 11) on July 15, 2022, seeking to represent a class defined as:

> All persons who, while residing in Illinois and employed by JRN, Inc., had
> their fingerprints collected, captured, stored, or otherwise used by JRN, Inc.

(*Id.* at ¶ 32).

JRN moved to dismiss the Amended Complaint, arguing that Williams's claims

were barred by a one-year statute of limitations. (Doc. 12). JRN further argued that, even

if a longer five-year statute of limitations applied to Williams's claims, her suit was still

barred because her first use of the biometric technology occurred more than five years

before she filed suit. (*Id.*). Alternatively, JRN asked the court to stay the case pending

decisions in two cases before the Illinois Supreme Court at that time regarding BIPA's

statute of limitations: *Tims v. Black Horse Motor Carriers, Inc.*, 216 N.E.3d 845 (Ill. 2023),

and *Cothron v. White Castle Systems, Inc.*, 216 N.E.3d 918 (Ill. 2023). (*Id.*). The Court granted

the motion to stay, and the case was stayed until *Tims* and *Cothron* were completely

resolved. In *Tims,* the Illinois Supreme Court established a five-year statute of limitations for claims arising under BIPA. *Tims*, 216 N.E.3d at 854. In *Cothron*, the Illinois Supreme Court held that a claim accrues upon each use of the biometric technology without informed consent. *Cothron*, 216 N.E.3d at 926.

Given the developments in the law that defeated JRN's initial motion to dismiss, the Court permitted JRN to file an amended responsive pleading to the Amended Complaint. JRN filed the instant motion to dismiss under Rule 12(b)(6) on October 5, 2023 (Doc. 26), Williams filed a response in opposition on November 6, 2023 (Doc. 31), and JRN filed a reply brief on November 27, 2023 (Doc. 32). The Court held oral argument on February 27, 2024. (Doc. 42). The parties also submitted supplemental authority in support of their positions. (Docs. 43, 44).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences — but not legal conclusions — in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual

allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

In 2008, Illinois passed BIPA due to concerns with emerging technology and the increasing collection and use of biometrics—identifiers such as retina or iris scans, fingerprints, voiceprints, or faceprints that are biologically unique to an individual. *See* 740 ILCS § 14/10; *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1203, 1206 (Ill. 2019) ("*Rosenbach II*"). Through BIPA, Illinois codified individuals' "right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." *Rosenbach II*, 129 N.E.3d at 1206; *see also Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020).

To that end, section 15 of BIPA imposes various obligations on private entities regarding the collection, retention, disclosure, and destruction of biometric identifiers and biometric information. As relevant here, under section 15(b), a private entity such as JRN may not collect, capture, purchase, receive through trade, or otherwise obtain a person's biometric identifier or biometric information without (1) informing the person from whom it is collecting biometric information, in writing, that it is doing so; (2) disclosing, in writing, the purpose of the collection and the length of the retention; and (3) obtaining written consent from the affected person. 740 ILCS § 14/15(b). Any person "aggrieved" by a violation of the Act has a right of action against an offending party. 740 ILCS § 14/20; *Rosenbach*, 129 N.E.3d at 1203.

JRN presents a number of arguments as to why Williams's BIPA section 15(b) claims should be dismissed under Rule 12(b)(6), including that: (1) Williams had no claim under existing law prior to January 2019; (2) the claims are barred by the doctrine of laches; (3) the claims are barred by assumption of the risk and implied consent; (4) Williams failed to plead negligent, reckless, or intentional conduct or entitlement to any damages; (5) the claims violate due process and seek excessive fines; and (6) Williams is precluded from seeking declaratory and injunctive relief.[1] The Court addresses each argument in turn.

### 1. Claims Accruing Under Illinois Law Prior to January 25, 2019

JRN first contends that none of Williams's claims accrued under BIPA prior to January 25, 2019, when the Illinois Supreme Court first decided what it meant to be "aggrieved" by a violation of the Act. JRN explains that between 2008 and 2017, no Illinois appellate court had interpreted the meaning of "aggrieved" as it is used in the statute. Then, in December 2017, an Illinois appellate court held that the failure to provide notice and obtain consent under BIPA section 15(b) was a mere technical violation of the statute that did *not* give rise to a claim. *Rosenbach v. Six Flags Ent. Corp.*, 147 N.E.3d 125 (Ill. App. 2017) ("*Rosenbach I*"). In 2018, another Illinois appellate court held that a BIPA claim *could* be brought without allegations of harm. *Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E.3d 1080 (Ill. App. 2018). JRN argues that *Sekura* made it entirely unclear whether technical

---

[1] JRN also asserted that any claims predating June 13, 2017, are barred by the five-year statute of limitations established in *Tims*. At oral argument, Williams acknowledged that she did not intend to bring any claims outside the five-year statute of limitations. Thus, the Court concludes that Williams's claims, and the claims of any putative class members, began accruing on June 13, 2017.

BIPA violations caused claims to accrue, and thus were actionable, until the Illinois Supreme Court finally settled the matter on January 25, 2019, in *Rosenbach II*. There, for the first time, the Illinois Supreme Court held that one is "aggrieved" by technical violations of BIPA. *Rosenbach II*, 129 N.E.3d at 1206.

According to JRN, dismissal of Williams's claims prior to January 25, 2019, is appropriate because no claims prior to that date accrued under then-existing Illinois law. Further, JRN reasonably relied on the then-existing interpretation of BIPA, and a retroactive application of the "new rule" would penalize its good faith efforts to comply with the statute. In essence, JRN avers that *Rosenbach II* should be applied prospectively only. In support of its argument, JRN points to *Gagen v. v. Mandell Menkes, LLC*, where the Circuit Court of Cook County, Illinois, in considering the same argument, determined that it was reasonable for the defendant to act in reliance on *Rosenbach I* and in compliance with the interpretation of BIPA in place at that time. *Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294 (Cir. Ct. Cook Cnty. Jan. 26, 2024). The court further stated that, "[t]o hold a defendant liable, at the outset of a matter, for actions that later became violations of a statute without additional facts would be to punish a defendant prematurely." *Id.*

Respectfully, this Court disagrees with the *Gagen* court. The only issue resolved by *Rosenbach II* was whether a plaintiff could file a lawsuit for a technical violation of BIPA—not whether a technical violation of BIPA was occurring to begin with. Indisputably, the answer to that question was "yes." The defendant in *Rosenbach II*, as with JRN here, had a responsibility to follow requirements of BIPA section 15(b) since its enactment in 2008. JRN's alleged actions did not "later become" a violation of BIPA once *Rosenbach II* was

decided.

JRN also asserts that this Court must evaluate the three-prong test defined in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), as adopted by the Illinois Supreme Court in *Aleckson v. Round Lake Park*, 679 N.E.2d 1224 (Ill. 1997), to determine whether *Rosenbach II* should be applied prospectively only. The first step in the *Chevron* test focuses on whether "the decision to be applied nonretroactively . . . establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* (cleaned up). Once this threshold requirement is met, a court must consider whether prospective-only application of the rule will promote or obstruct the purpose behind the rule and whether prospective-only application is mandated by the balance of equities. *Id.*

Here, the Court can stop at the first *Chevron* factor. *Rosenbach II* did not establish a new principle of law or overrule clear past precedent on which a litigant may have relied. Nor was there prior precedent stating that a private entity need not follow BIPA. Instead, *Rosenbach II* simply affirmed the meaning of "aggrieved" within BIPA—a term that the Illinois Supreme Court found to be plain and unambiguous all along. *Rosenbach II*, 129 N.E.2d at 1207 (requiring actual injury beyond a technical violation of BIPA would depart from the plain and unambiguous meaning of "aggrieved" in the statute).

For these reasons, the Court declines to apply *Rosenbach II* prospectively only. Under Illinois law, Williams was aggrieved each time JRN allegedly collected, stored, and used her fingerprints from June 13, 2017, until she left JRN's employment. JRN's motion to dismiss all claims that accrued prior to January 25, 2019, is denied.

2.  **Laches**

JRN next argues that Williams's claims are barred by the doctrine of laches. Under Illinois law, "laches is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party." *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 15-16 (Ill. 2016). Laches is an affirmative defense "derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). Because a complaint need not anticipate affirmative defenses, dismissal under Rule 12(b)(6) is only appropriate where the affirmative defense is established by the face of the complaint. *Sloat v. Camfil USA, Inc.*, No. 23 CV 5125, 2024 WL 1556268, at *5 (N.D. Ill. Apr. 10, 2024) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)).

JRN argues that, as early as 2015, Williams was aware she used a timeclock that required her to scan her finger to track her hours worked. Yet, she did not bring this lawsuit until nearly six years later. JRN asserts that Williams's decision to sleep on her rights while she was employed by JRN prejudiced it by depriving it of the ability to correct the issue in real time. Because Williams unreasonably delayed bringing her claims against JRN, to the prejudice of JRN, she should be barred from recovering by the doctrine of laches.

In response, Williams argues that laches is both an affirmative defense and an equitable doctrine that is dependent on factual context. Thus, it is unsuitable for resolution on a motion to dismiss. Moreover, Williams asserts, JRN's argument that it was deprived of the opportunity to correct the problem in real time misses the point: JRN

is a sophisticated corporation with ample opportunity to retain counsel and ensure compliance with BIPA prior to collecting and storing its employees' fingerprints. It did not need to wait for its employees to sue to be put on notice of its obligations.

The allegations of the Amended Complaint do not establish that Williams unreasonably delayed the filing of her lawsuit. Williams ended her employment with JRN in September 2021, and she filed this action in June 2022. This is well within the five-year statute of limitations established by *Tims*. Moreover, the Court agrees with Williams that JRN was not prejudiced by any alleged delay. BIPA has been the law in Illinois since 2008, and JRN introduced its fingerprint timeclock in approximately 2015. JRN did not need to wait for Williams to assert a violation of BIPA for it to be on notice of the law. Because the affirmative defense of laches is not apparent from the face of the Amended Complaint, the Court denies JRN's motion to dismiss on this basis.

### 3. Assumption of Risk and Implied Consent

JRN also argues Williams can only bring a BIPA claim if her biometric identifiers were retained and disclosed "without [] her consent or knowledge," citing *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (Ill. 2021). If Williams had actual knowledge that her biometric information was being collected prior to such collection, then there is no BIPA violation, because she was able to "control [her] biometric information" and had "the power to say no by withholding consent." *Rosenbach II*, 129 N.E.3d at 1206. And, as Williams has conceded, she had knowledge since 2015 or 2016 that she was scanning into a "fingerprint-activated timeclock." Thus, she cannot claim to be unaware of the alleged BIPA violation.

JRN further asserts that the Illinois Supreme Court made clear in *Krishna* that BIPA is an informed consent statute and that consent may be established in forms other than a written release. *Krishna*, 183 N.E.3d 47 at 58. Here, Williams gave implied consent to the alleged conduct by voluntarily continuing to use the "fingerprint-activated timeclocks" when clocking in and out of work for over five years. Because Williams implicitly consented to the capture, collection, and retention of her alleged biometric information, JRN argues, she assumed the risk of which she now complains.

In response, Williams contends JRN is ignoring BIPA's statutory text, which prohibits an employer from collecting biometric information "unless it first … receives a written release." 740 ILCS § 14/15. Permitting an employer to rely on an "implied consent" defense would read the requirement of a written release out of the statute. Moreover, Williams argues, JRN's claim that she assumed the risk by showing up to work each day and using the timeclock to clock in improperly shifts the burden onto the employee. Finally, Williams argues that a motion to dismiss on an affirmative defense requires a showing that the plaintiff pleaded herself out of court, and JRN has failed to do that here. JRN would need to show that Williams appreciated the risk that caused the injury, and there are no such allegations in the Amended Complaint.

As an initial matter, *Krishna* does not hold that consent as required by BIPA may be established in forms other than a written release. It simply states that, under BIPA, "disclosing a person's biometric identifiers or information without his or her **consent or knowledge** necessarily violates that person's right to privacy in biometric information." *Id.* (emphasis added). The Illinois Supreme Court did not interpret this provision to mean

that a private entity can obtain implied consent simply by having an employee use the technology on a daily basis.

Furthermore, while assumption of the risk arises where a plaintiff's conduct indicates he has implicitly consented to encounter an inherent and known risk, assumption of the risk is not a defense to a strict liability statute. *Brandenburg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021). And BIPA imposes liability regardless of whether damages beyond the statute's violation can be shown and irrespective of the violator's state of mind—*i.e.*, it is a strict liability statute. *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020) (citing *Rosenbach*, 129 N.E.3d at 1207). This Court therefore agrees with those courts holding that "allowing a defendant to evade liability . . . based on implied assumption of the risk would be inconsistent with [] BIPA's requirement that an entity provide written notice that it is collecting biometric information, its purpose for doing so, and the length of such collection and [that it] obtain a written release from the person whose information it is collecting." *Id.*; *see also Brandenburg*, 564 F. Supp. 3d at 635 ("BIPA 'plainly appears to abrogate' the doctrine of implied assumption of risk.").

Moreover, even if assumption of the risk or implied consent were available defenses under BIPA, there is no indication from the face of the Amended Complaint that Williams appreciated or understood that JRN was collecting, storing, and using her biometric identifiers. She alleges only that she was required to clock in and out using a fingerprint timeclock, and "simply knowing how a piece of technology works does not impute knowledge of what data is collected, how that data is stored, or whether or not

that data is disclosed to a third party." *Gagen*, No. 2023 L 008294 (Cir. Ct. Cook Cnty. Jan. 26, 2024).

For these reasons, the Court denies JRN's motion to dismiss based on assumption of the risk and implied consent.

**4. Failure to Plead Negligent, Reckless, or Intentional Conduct**

BIPA provides that an individual may recover liquidated damages of up to $1,000 for negligent violations of BIPA, or up to $5,000 for reckless or intentional violations. 740 ILCS § 14/20. Here, JRN argues, the Amended Complaint is devoid of any allegations demonstrating negligent, reckless, or intentional conduct that would support an award of liquidated damages. Instead, Williams makes conclusory allegations that JRN negligently, recklessly, or intentionally failed to comply with BIPA, which is insufficient to state a claim upon which relief may be granted. Alternatively, JRN moves to strike the request for monetary, injunctive, and declaratory relief as speculative pursuant to Rule 12(f). JRN asserts that, considering the massive range of potential damages, Williams must allege facts supporting allegations of negligence or recklessness at the earliest possible opportunity—and she has not done so.

Williams, in response, argues that while the availability of liquidated damages is limited to violations that are negligent, reckless, or intentional, this consideration is separate from the standard for stating a claim. Williams cites *Stauffer v. Innovative Heights Fairview Heights, LLC*, where a court in this district found that a plaintiff need only allege facts establishing a violation of BIPA; "the 'negligent' and 'intentionally and recklessly' standards come into play when determining remedies." 480 F.Supp.3d 888, 906-07 (S.D.

Ill. 2020). Williams asserts she has stated a claim for a Section 15(b) violation, which is all she must do at this time. The question of statutory damages is a question for another day, not a basis for a dismissal.

The Court agrees with Williams and the majority of courts to encounter this issue that a request for liquidated damages is a type of remedy—not a claim itself—that comes into play only if a plaintiff prevails on her BIPA claim. *See Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2024 WL 1555848, at *4 (N.D. Ill. Apr. 10, 2024) ("The majority of recent cases that directly address this issue hold that a plaintiff is not required to make specific allegations about a [d]efendant's mental state to successfully plead a BIPA claim."). At the pleading stage, Rule 8(a)(3) does not require a plaintiff to plead the defendant's mental state, it states only that a plaintiff must plead "a demand for the relief sought." FED. R. CIV. P. 8(a)(3); *see also Kyles v. Hoosier Papa LLC*, No. 1:20-CV-07146, 2023 WL 2711608, at *7 (N.D. Ill. Mar. 30, 2023) (finding that the defendant's state of mind had no bearing on the plausibility of the plaintiff's alleged BIPA claims themselves but merely would determine what damages the plaintiff may recover); *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874 (N.D. Ill. 2022) (denying motion to dismiss request for liquidated damages because a plaintiff need not allege facts suggesting any level of culpability to plausibly state a BIPA claim in the first place).

Because Williams is not required to allege JRN's state of mind at this stage, the Court denies JRN's motion to dismiss Williams's request for liquidated damages.

5. **Due Process and Unconstitutionally Excessive Fines**

JRN next argues that the Due Process Clause of the Fourteenth Amendment

prohibits the imposition of a grossly excessive award on a tortfeasor. Here, Williams

seeks to recover more than $5,000,000 in damages for alleged technical violations of a

statute without a showing of any injury. JRN asserts such an award would be shocking

and grossly excessive, and would violate JRN's due process rights. Thus, it argues,

Williams's BIPA claims should be dismissed with prejudice.

Williams argues, and the Court agrees, that any determination related to damages

is premature at this stage. A class has not yet been certified, and there has been no

discovery as to the scale of JRN's liability. Thus, there is no basis for this Court to decide

on a motion to dismiss that a judgment against JRN would be "grossly excessive." JRN's

motion to dismiss is denied on this ground.

## 6. <u>Declaratory and Injunctive Relief</u>

Finally, JRN argues that Williams cannot pursue her requests for declaratory and

injunctive relief because she has not worked for JRN since April 2021. JRN cites *Simic v.*

*City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), for the proposition that a past injury is

insufficient to establish Article III standing for prospective injunctive relief. Former

employees like Williams, it argues, lack standing to pursue declaratory and injunctive

relief unless they are in danger of future harm from such practices. Thus, Williams' claims

for declaratory and injunctive relief should be dismissed.

In response, Williams argues that JRN is seeking to dismiss a remedy rather than

a claim. Like her request for liquidated damages, Williams contends, she need not show

entitlement to the precise form of relief that she seeks at the pleading stage.

While injunctive and "other relief" is available under 740 ILCS § 14/20, the Court

agrees with JRN that Williams lacks standing to seek declaratory or prospective injunctive relief in federal court. To establish standing, a "plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019). A plaintiff seeking injunctive relief must also demonstrate that he faces a "real and immediate" threat of future injury. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief: Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Simic*, 851 F.3d at 738. Likewise, to determine whether a request for declaratory relief presents a case or controversy under Article III of the Constitution, a court must question whether the facts alleged, under all the circumstances, "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 740 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).

Here, the Amended Complaint does not establish Williams's standing to seek declaratory and prospective injunctive relief. Williams has not used the fingerprint timeclock since her employment with JRN ended in 2021, so she no longer faces a real and immediate threat of future injury. Thus, there is no present case or controversy for the Court to decide. Because Williams lacks standing to seek declaratory or injunctive relief, JRN's motion to dismiss is granted on this basis.

CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant JRN, Inc. (Doc. 26) is

**GRANTED in part and DENIED in part**. Plaintiff D'Lisa Williams's request for

declaratory and injunctive relief is **DISMISSED without prejudice**.

This case shall proceed with discovery on the allegations in Williams's Amended

Complaint. (Doc. 10). The Court will set a telephonic scheduling conference by separate

Order.

**IT IS SO ORDERED.**

**DATED:  June 5, 2024**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**